UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAGS II, LLC and G2BK, LLC,

    Plaintiffs,

v.

File No. 1:13-cv-393

HON. ROBERT HOLMES BELL

THE HUNTINGTON NATIONAL
BANK, N.A and FOURTEEN CORP.,

    Defendants.
                                     /

## **OPINION**

This is a diversity case for declaratory judgment related to several commercial loan transactions and mortgages, as well as state-law claims related to a series of security agreements. Defendants filed a motion for partial summary judgment on Plaintiffs' claims (Dkt. No. 26) and Plaintiff filed a motion for summary judgment on its own claims (Dkt. No. 28) on September 3, 2013. The parties filed responses (Dkt. Nos. 35 and 38, respectively) to each others' briefs, as well as replies (Dkt. Nos. 39 and 40, respectively). On November 7, the Court held oral argument on the motions, at which time the parties agreed that their motions were duplicative.

While Plaintiffs' complaint contains multiple claims for relief, their theory of the case hinges on two issues. First, whether an admission Defendants now claim is erroneous can be amended to be a denial. Second, whether a mortgagor has standing to challenge the terms of an assignment of the mortgage. For the reasons that follow, the Court holds that Defendants may so amend their answers and that Plaintiffs' lack standing to challenge the terms of the assignment in question. Consequently the Court will grant-in-part and deny-in-part Defendants' motion and deny-in-part and grant-in-part Plaintiffs' motion.

## I.

Plaintiff DAGS, II ("DAGS") is a Michigan Limited Liability Company formed to acquire assets from the bankruptcy estate of Baker Lofts, LLC ("Baker"). As a part of this transaction, DAGS was assigned all claims possessed by Baker. Plaintiff G2BK is a Michigan Limited Liability Company that operates, *inter alia*, a restaurant dependant on the liquor license at issue in this case. Defendant Huntington is a national banking concern with its principle place of business in Ohio. Defendant Fourteen Corporation is an Ohio Limited Liability Company and a wholly owned subsidiary of Huntington.

Scott Bosgraff formed Baker sometime prior to 2004. Baker obtained the abandoned Baker Lofts Furniture Company building in Holland, Michigan, for the purpose of renovating it into a mixed-use building. Baker granted a mortgage to Defendant Huntington in 2004 ("2004 Mortgage") to secure construction notes to finance its renovation. Baker granted a second mortgage in 2005 ("2005 Mortgage"). These mortgages both secured *all* of Baker's existing debt and any future advances. Also in 2005, Baker entered into a Brownfield reimbursement agreement with the City of Holland that provided on-going financing though a tax-increment financing plan (the "TIF"). Baker assigned this TIF to Defendant Huntington as collateral for its existing debts.

Baker continued borrowing from Defendant Huntington, and in 2006, Baker granted Defendant Huntington a security interest in all of its tangible and intangible assets. The security agreement covered all existing debt and future advances and also covered all existing property and after-acquired property. At some point, Baker also obtained a liquor license from the State of Michigan.

In 2007, Baker executed a Second Restated Phase II Construction Promissory Note

($2,675,000) in favor of Defendant Huntington which modified its obligation on loans already made. In 2008, Baker executed a Restated Phase III Construction Promissory Note ($2,457,364) in favor of Defendant Huntington that similarly modified loans already made.[1]

By 2011, Baker had fallen behind in its repayment schedule. Defendant Huntington wished to have its subsidiary, Defendant Fourteen, foreclose the 2005 Mortgage, and hold title in its name. To this end, Defendant Huntington assigned the 2005 Mortgage to Defendant Fourteen. The effect of this assignment is an issue of disagreement. Plaintiffs assert that the assignment operated to transfer *all* of its indebtedness to Defendant Fourteen. Defendant Huntington maintains that the assignment only transferred enough debt to allow Defendant Fourteen to purchase the Baker property at sheriff's sale. Counsel for Defendants gave Baker notice on June 6, 2011, that Baker was in default and that the 2005 mortgage would be foreclosed. Defendant Fourteen successfully credit bid and foreclosed the 2005 mortgage on the Baker property. The redemption period expired in March of 2012.

Defendant Fourteen successfully bought the property, subject to the first mortgage, for about $1.8 million in July 2011. In December 2011, Defendant Huntington learned that Baker had transferred its liquor license to Plaintiff G2BK. Because the liquor license was subject to Defendant Huntington's security agreement with Baker, Plaintiff G2BK agreed to sign a security agreement in favor of Defendant Huntington, in which Baker acknowledge its indebtedness to Defendant Huntington.

In January 2012, Baker filed for bankruptcy. Learning of this, Defendant Huntington sold the

---

[1] Although Huntington makes oblique reference to other debts owed by Baker, these Notes are the only two it has submitted in evidence, and the only two used to actually calculate what is due and owing.

TIF to itself and then re-sold it to a third party in March 2012. In the fall of 2012, Plaintiff DAGS purchased from the bankruptcy trustee "all right, title, and interest" Baker had in: the TIF; restaurant equipment; appliances; liquor license; real property; and claims against others.

Plaintiffs' complaint contains seven counts for relief. One, declaratory judgment that Baker is not indebted to Defendant Huntington, that the security agreements are invalid, and that the liquor license security agreement between Defendant Huntington and Plaintiff G2BK is invalid. Two, declaratory judgment that Baker is not indebted to Defendant Fourteen and that the security agreements are invalid. Three, conversion as to Defendant Huntington for receiving payments under the TIF and for selling the TIF. Four, conversion as to Defendant Huntington for collecting rents on the Baker properties. Five, a claim for replevin against Defendant Huntington for return of the TIF. Six, tortious interference against Defendant Huntington for directing the City of Holland to issue payments under the TIF to Defendant Huntington. Seven, violation of Michigan's secured transactions statute, for exercising rights on a security agreement that was no longer valid.

The parties' theory of the case can be fairly summarized as follows. Plaintiffs argue that in Defendants' answer to paragraph 64 of the complaint, Defendants admitted that the 2004 and 2005 Mortgages were assigned from Defendant Huntington to Defendant Fourteen. Plaintiffs further assert, on the basis of their interpretation of the document assigning the 2005 Mortgage, that Defendant Huntington assigned to Defendant Fourteen all the underlying debt then due. Therefore, Plaintiffs argue, when Defendant Fourteen foreclosed the 2005 Mortgage it also extinguished the 2004 Mortgage under Michigan's equitable merger doctrine. Plaintiffs argue that this foreclosure discharged the debt Baker owed Defendant Fourteen, and therefore renders all the security agreements unenforceable.

4

Defendants counter that their admission in response to paragraph 64 of the complaint was inadvertent, and that they should be allowed to amend their answer to make the admission a denial. In support, they point to the fact that they specifically denied that Defendant Huntington had assigned the 2004 Mortgage to Defendant Fourteen in response to paragraph 35 of their answer. They also point out that Plaintiffs have provided no evidence of the assignment of the 2004 Mortgage, other than the answer. Therefore, Defendants argue, Defendant Huntington always held the 2004 Mortgage, and the same was not discharged when Defendant Fourteen foreclosed the 2005 Mortgage. Further, Defendant Huntington asserts that it did not assign all of Baker's debt to Defendant Fourteen, but rather only so much of the debt as to enable Defendant Fourteen to purchase the Baker property at sheriff's sale. Defendants assert that in any event, Plaintiffs lack standing to challenge the terms of the assignment

## II.

**A.     Motion Standards**

The standards upon which the Court evaluates a motion for summary judgment do not change simply because the parties present cross motions. *Relford v. Lexington–Fayette Urban Cnty. Gov't*, 390 F.3d 452, 456 (6th Cir. 2004). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987)).

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the moving party will not carry the burden of proof at trial, the party must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted). A defendant moving for summary judgment is not required, however, to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas and Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**B.     Issues of Law**

1.     *Leave to Amend an Answer*

Leave to amend a pleading may be had as a matter of course within 21 days of filing the complaint, or 21 days after service of a responsive pleading is served, if one is required, or 21 days of service of motions under Rule 12(b), (e), or (f). Fed. R. Civ. P. 15(a)(1). After this period expires,

leave to amend the pleadings may be granted by the Court; the Court should grant such leave freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision of whether to grant leave to amend the pleadings is within this Court's sound discretion. *Leary v. Daeschner*, 349 F.3d 888, 904 (6th Cir. 2003); *see also Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974) ("[w]hen 'justice so requires' is within the trial court's broad range of discretion.").

The Court may deny such leave, however, where there exists "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 589, 613 (6th Cir. 2005) (internal citations and quotations omitted).

The present case asks this Court to decide whether a defendant may amend its answer to change an admission of a material fact into a denial. As one district court noted in 1986, "Authority on this issue is surprisingly sparse." *Currie v. United States*, 111 F.R.D. 56, 57 (M.D. N.C. 1986). A paucity of authority remains nearly thirty years later. The Sixth Circuit has addressed the issue of amending an answer to add a defense. *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) (holding that the district court did not abuse its discretion in allowing the addition of a legally valid defense). It has not addressed the instant issue. Looking outside the circuit lends credence to Defendants' theory that they should be allowed to change their admission to a denial.

"The presumption runs in favor of permitting defendants to amend their answer" when the factors identified in *Foman v. Davis*, 371 U.S. 178, 182 (1962), are absent. *Morales v. Landis Const. Corp.*, 715 F.Supp.2d 26, 90 (D.D.C. 2010). As early as 1945, the Second Circuit recognized that when an "admission was inadvertently made" a defendant should be allowed to amend the admission

7

to conform with its position on the facts. *Voltmann v. United Fruit Co.*, 147 F.2d 514, 516 (2d Cir. 1945). Other circuits have also allowed a defendant to change an admission to a denial on the basis of inadvertence. *See, e.g., Watson v. Schwarzenegger*, 347 F. App'x 282, 285 (9th Cir. 2009). Such inadvertence is evidenced by contradictory admissions and denials in the answer that the defendant later seeks to harmonize through an amendment or through later discovery of conflicting evidence. *See Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 631 (S.D.N.Y. 1985); *Morales*, 715 F. Supp. 2d at 91.

Important considerations in allowing a defendant to amend its answer are unfair prejudice and delay. *See Allen* 610 F. Supp. at 631; *Phelps*, 30 F.3d at 662. Determining whether an amendment would unfairly prejudice the plaintiff requires the Court to consider "whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps*, 30 F.3d at 662–63. Such prejudice is ameliorated to some degree the earlier the plaintiff knows of the proposed denial, particularly when "plaintiff was notified of defendant's denial, at the latest, in defendant's summary judgment brief, well in advance of trial." *Currie*, 111 F.R.D. at 59. However, the existence of *any* prejudice to the plaintiff is not "a reason to bind defendants to what they now believe is a factually incorrect answer." *Morales*, 715 F. Supp. 2d at 91.

The Court interprets Defendants' statement in their briefing that they "will amend" their answer (Defs.' Resp., Dkt. No. 35 at 6 n.2) and their arguments in support of such amendment, (*id.* at 15–16) (admission was "mistaken"); (*id.*) (no evidence in record showing assignment of 2004 Mortgage); (Defs.' Reply, Dkt. No. 39 at 8–9) (reiterating arguments in support of amendment), as

8

a motion for leave to amend their answer.

Plaintiffs oppose such an amendment on the basis that Defendants' answer constitutes a binding legal admission. Specifically, Defendants have included in their briefing a nearly one-page footnote quoting extensively from an opinion of Magistrate Judge Brenneman on the subject of judicial admissions (Pls.' Br., Dkt. No. 29 at 16 n.8) (quoting *JPMorgan Chase Bank, N.A. v. The Chelsie Corporation*, 1:12-cv-353, 2013 WL 2558428, at *4 (June 11, 2013) (discussing effect of judicial admission)). Defendants stridently cite Magistrate Judge Brenneman's opinion for the proposition that a judicial admission is absolutely binding on a party and may never be changed or challenged, either on appeal or at trial. Tellingly, the one sentence that Plaintiffs have omitted from their extensive quote is the phrase "a judicial admission is conclusive, unless the court allows it to be withdrawn." *JPMorgan*, 2013 WL 2558428, at *4.

Here, there is good reason to allow Defendants' admission to be withdrawn. First, the admission is directly contradicted by a denial in the same answer. Specifically, paragraph 35 of the complaint states, "Upon information and belief, the Assignment sold, assigned and transferred all right, title and interest Huntington had in the 2004 Mortgage to Fourteen Corp." (Compl. Dkt. No. 1 ¶ 35). Defendants answered, "Huntington and Fourteen Corp. deny the factual allegations as untrue" (Ans., Dkt. No. 12). Further, in response to discovery requests to provide all assignments, Defendant Huntington asserts that it only tendered the assignment of the 2005 Mortgage because that was the only assignment that had been made. County records cited by Defendants reveal that no assignment was recorded, and in fact Defendant Huntington discharged the 2004 Mortgage after Defendant Fourteen foreclosed the 2005 Mortgage. These facts point to Defendants' admission as being inadvertent, and thus of the type that should be allowed to be withdrawn by this Court.

The proposed denial also would not prejudice Plaintiffs. The proposed change comes relatively early in litigation, at the summary judgment stage. *See, e.g., Currie*, 111 F.R.D. at 59. Plaintiffs will not have to expend significant resources in discovery, because a reason for the denial is the lack of evidence to support the inadvertent admission. Finally, to the extent that an amendment *may* prejudice Plaintiffs, such prejudice is insufficient to "bind defendants to what they now believe is a factually incorrect answer." *Morales*, 715 F. Supp. 2d at 91.

In responding to Defendants' arguments that they should be allowed to amend their answer, Plaintiffs have produced no evidence that the 2004 Mortgage was actually ever assigned. Instead, they have resorted to conspiratorial conjecture about Defendants' trial strategy (*see* Pls.' Reply, Dkt. No. 40 at 5 n.5) (imagining a strategy session in which Defendants' say amongst themselves, "Let's think about this. The assignment was amongst ourselves, so we can pretty much say whatever we want, and no one can challenge it. So, before we decide how to answer this question, let's figure out where Plaintiffs might be going with this allegation. Plaintiffs are making a big deal about Fourteen Corp owning one thing and Huntington owning something else. Not sure what that gives them, but better safe than sorry. So, let's say that Fourteen Corp owned both the 2004 Baker Mortgage and the 2005 Baker Mortgage."). The Court is inclined to think that Plaintiffs, in the words of the Bard, "do[] protest too much" about the purported assignment of the 2004 Mortgage. WILLIAM SHAKESPEARE, HAMLET act 3, sc. 3.

Defendants have shown that justice requires the Court to grant leave to amend their answer. In response, Plaintiffs have failed to show prejudice that results from such an amendment. Defendants, therefore, may amend their answer to paragraph 64 of the complaint to deny that Defendant Huntington assigned to Defendant Fourteen the 2004 mortgage.

Because Defendants deny that Defendant Huntington assigned the 2004 Mortgage to Defendant Fourteen, and because Plaintiffs have failed to produce even a scintilla of evidence that the 2004 Mortgage was assigned to Defendant Fourteen, there is no genuine issue of fact with regard to this issue. The Court finds that Defendant Huntington assigned the 2005 Mortgage to Defendant Fourteen, but retained the 2004 Mortgage.

2.  *Standing to Challenge an Assignment*

Plaintiffs assert that, by its terms, the document assigning the 2005 Mortgage to Defendant Fourteen transferred all of the debt Baker owed Defendant Huntington. Defendants argue that Plaintiffs lack standing to challenge the terms of the assignment because Plaintiffs are neither a party to the assignment, nor a third-party beneficiary of the assignment.

Under Michigan law, when parties to an assignment act in accordance with that assignment and there is no evidence that either party objects to that performance, a third-party cannot challenge the validity of that assignment. *Woods v. Ayres*, 39 Mich. 345 (1878). A logical extension of this maxim is that a mortgagor cannot challenge the validity of a mortgage assignment. *See Livonia Pro. Holdings, L.L.C. v. 12840–12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 736 (E.D. Mich 2010) (collecting Michigan cases). Plaintiffs argue vociferously that the cases cited by Defendants only apply to a third-party challenging the validity of an assignment. However, the Michigan Supreme Court long ago quoted with approval *Gamel v. Hynds*, 125 P. 1115 (Okla. 1912), which held "the maker of a . . . note cannot . . . litigate questions that can properly arise only between the holder and his immediate indorser." *Bowles v. Oakman*, 222 N.W. 613, 614 (Mich. 1929). The question of how much of the debt obligation was transferred between Defendants is clearly a question that could only be litigated between them. Applying these rules to the instant case, it is clear

that Plaintiffs do not have standing to challenge the terms of the assignment of the 2005 Mortgage between from Defendant Huntington to Defendant Fourteen.

A vice-president of Defendant Huntington and Defendant Fourteen who was involved in the assignment has testified that the parties intended to transfer only so much of the debt as was necessary for Defendant Fourteen to successfully bid on the Baker property at the sheriff's sale (Wilk Dep., Dkt. No. 25-5 at 10–13). Therefore, the Court finds that there is no genuine fact issue as to the amount of debt transferred from Defendant Huntington to Defendant Fourteen in the assignment of the 2005 Mortgage. Per Defendants' deposition testimony, only so much of the debt as was necessary to complete the foreclosure sale was transferred. Specifically, the Court finds that Defendant Huntington transferred $1,856,250.00 of Baker's debt to Defendant Fourteen to finance Defendant Fourteen's bid at the foreclosure sale (Bid Sheet, Dkt. No. 30-4 at 4).

**C. Plaintiffs' Claims**

Because resolution of the above legal issues leaves no genuine issues of fact, it remains for the Court to apply the relevant law to the undisputed facts to determine which, if either, party is entitled to summary judgment.

Defendants have asserted and supported with documents and deposition testimony that Defendant Huntington assigned to Defendant Fourteen only so much of Baker's debt as was necessary to purchase the Baker property at sheriff's sale. As discussed above, Plaintiffs lack standing to challenge this assignment. The parties agree that Defendant Huntington also assigned the 2005 mortgage to Defendant Fourteen and that Defendant Fourteen foreclosed that mortgage. The 2005 mortgage was not redeemed.

Under Michigan law, "Upon a foreclosure sale, the mortgage debt is considered paid and the

mortgage lien discharged." *Senters v. Ottawa Sav. Bank, FSB*, 50 N.W.2d 639, 941 (Mich. 1993) (citing *Wood b. Button*, 172 N.W. 422 (1919)). Therefore, the amount of debt Baker owed to Defendant Fourteen was discharged when it completed the foreclosure of the 2005 Mortgage. For this reason, there can be no debt owed by Baker to Defendant Fourteen. Plaintiffs are entitled to summary judgment on Count II of their complaint with respect to their contention that Baker is not indebted to Defendant Fourteen. However, because the Baker Collateral Agreements are enforceable, as explained *infra*, the Court cannot declare the same agreements unenforceable, as Plaintiffs request in the remainder of Count II.

Plaintiffs' remaining claims for declaratory judgment are that Baker is no longer indebted to Huntington (Count I) and that the security agreements are unenforceable (Counts I and II). Plaintiffs' claim that the security agreements are unenforceable are predicated on their assumption that all of Baker's debt was transferred to Defendant Fourteen, and therefore discharged at the sheriff's sale. Plaintiffs have not presented evidence that the security agreements are inauthentic, nor that they have otherwise become unenforceable, other than to argue that under Michigan law a security interest is discharged when the underlying obligation is discharged. The Court need not reach the merits of Plaintiffs' argument because the underlying obligation has *not* been discharged, as explained above. The Court holds, in the absence of any evidence that the security agreements are otherwise voidable, that the security agreements at issue remain enforceable. Defendants are entitled to summary judgment on Count I of Plaintiffs' complaint and on Count II as it relates to the security agreements.

As to the remaining state-law claims, the Court reserves its judgment. While there does not seem to be a genuine dispute that Baker was in default prior to 2011, in both their briefing and at oral

13

argument, the parties gave only cursory attention to the issues surrounding Defendant Huntington's execution of its rights under the various security agreements. This reservation of judgment, of course, does not foreclose the possibility of resolution of these issues under further dispositive motions, pursuant to the Court's June 24, 2013, First Case Management Order (Dkt. No. 17).

**D.     Supplemental Filings**

At oral argument, the Court invited the parties to submit one page statements outlining any arguments they felt were not fully developed or that occurred to them on the drive home. This lead to a cascade of filings of supplemental briefs and sur-replies, as well as additional exhibits, and an objection. The Court did not rely on these supplemental materials in reaching its decision, and thus the objection (Dkt. No. 45) is overruled as moot.

### III.

For the foregoing reasons, Defendants' motion is granted with respect to Count I and granted-in-part and denied-in-part with respect to Count II, as explained above. Conversely Plaintiffs' motion is denied with respect to Count I and granted-in-part and denied-in-part with respect to Count II, as explained above. Both Defendants' and Plaintiffs' motions are denied with respect to Counts III – VII, however the parties may renew their motions with respect to these claims after the Court holds a second scheduling conference.

The Court will issue an Order in accordance with this Opinion.


Dated: December 30, 2013                                    /s/ Robert Holmes Bell
                                                            ROBERT HOLMES BELL
                                                            UNITED STATES DISTRICT JUDGE