UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAGS II, LLC and G2BK, LLC,

      Plaintiffs,

File No. 1:13-CV-393

v.

HON. ROBERT HOLMES BELL

THE HUNTINGTON NATIONAL
BANK, N.A and FOURTEEN CORP.,

      Defendants.
_____/

**OPINION**

      This is a diversity case for declaratory judgment related to several commercial loan transactions and mortgages, as well as state-law claims related to a series of security agreements. In September 2013, the parties filed cross-motions for summary judgment. The Court held oral argument on the motions on November 7, 2013. On December 30, 2013, this Court entered an Order granting in part and denying in part the parties' cross-motions for summary judgment. Since that time, the parties have filed amended pleadings.

      This matter is again before the Court on cross-motions for summary judgment (ECF Nos. 70, 71). At issue again is whether the debt secured by a senior mortgage was extinguished upon the foreclosure of a junior mortgage. With respect to this issue, two questions are in dispute. First, whether Defendant Fourteen should be considered the alter ego of Defendant Huntington. Second, whether Defendant Fourteen significantly underbid the value of the property at issue at the foreclosure sale. For the reasons that follow the Court holds that Defendants are not alter egos of each other, and therefore genuine fact issues do not exist with respect to Plaintiffs' Amended Complaint.

**I**.

The operative facts of this case have not changed since the Court issued its Amended Opinion (ECF No. 50) on December 31, 2013, and the Court will not repeat them all here. However, in that same Opinion, the Court made conclusions of law that resolved certain factual disputes. The facts as they stand that are relevant to the present motion are recited as follows.

In early 2011, Baker[1] owed Defendant Huntington approximately $5 million in various outstanding bank notes. These notes were secured by, among other security agreements, two mortgages (the 2004 Mortgage and the 2005 Mortgage) on the Baker properties. In May of 2011, Defendant Huntington assigned to Defendant Fourteen the 2005 Mortgage. Baker was in default, and Defendant Fourteen began foreclosure proceedings against it. Contemporaneously, Defendant Huntington assigned to Defendant Fourteen so much of the underlying debt as was necessary to enter a credit bid at sheriff's sale.

Defendant Fourteen successfully bid approximately $1.8 million dollars at sheriff's sale and after the redemption period expired took possession of the Baker property. Defendant Fourteen ultimately sold the Baker properties to GR Developments, LLC in April 2012 for $2,355,000.

Defendant Huntington, acting on the assumption that Baker was still indebted to it for approximately $3 million foreclosed on the TIF, and sold it separately to GR Developments, and also foreclosed on the other security interests securing the debt that Baker had executed.

Plaintiffs now argue that in applying *Board of Trustees of General Retirement System v. Ren-Cen Indoor Tennis & Racquet Club*, 377 N.W.2d 432 (Ct. App. Mich. 1985), to this case, the Court

---

[1] The terms "2004 Mortgage", "2005 Mortgage", "TIF", "Baker", and "Baker properties" are defined in this Court's Amended Opinion. (ECF No. 50.)

should exercise its equitable powers to declare that as of the 2011 sheriff's sale, Baker was no longer indebted to Defendant Huntington for any amount because Defendants should be treated as a single entity. Consequently, Plaintiffs argue that Defendant Huntington's security interests became null and void because they secured no debt.

Defendants argue that this Court already decided in its prior Opinion that as of May 2011 Baker was still indebted to Huntington. Alternatively, Defendants argue that Plaintiffs have failed to create genuine fact issues regarding (1) whether Defendants Huntington and Fourteen should be treated as a single entity; and (2) whether Defendant Fourteen significantly underbid the value.

## II.

**A.  Motion Standards**

The standards upon which the Court evaluates a motion for summary judgment do not change simply because the parties present cross motions. *Relford v. Lexington–Fayette Urban Cnty. Gov't*, 390 F.3d 452, 456 (6th Cir.2004). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987)).

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When the moving party will not carry the burden of proof at trial, the party must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted). A defendant moving for summary judgment is not required, however, to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court holds oral argument is unnecessary for the disposition of the motion.

**B.     Law of the Case**

"Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (citing *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir.1994)).

The doctrine directs a court's discretion, but "'does not limit the tribunal's power.'" *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). Thus, the doctrine is to be applied in the context of a court's common sense, and is not "an inexorable command." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (internal quotations and citations omitted).

Defendants argue that this Court's previous Opinion necessarily addressed Plaintiffs' arguments under the *Ren-Cen* case. Defendants argue that "this Court ruled that the remaining Baker Loft indebtedness was not extinguished upon Fourteen Corp's foreclosure under the 2005 Mortgage[.]" (Def.'s Br. 10, ECF No. 70.) Defendants do not cite a specific passage for this proposition. In fact, the Court held "that Defendant Huntington assigned the 2005 Mortgage to Defendant Fourteen, but retained the 2004 Mortgage." (Am. Op. 11, ECF No. 50.) The Court further found that "Defendant Huntington transferred $1,856,250.00 of Baker's debt to Defendant Fourteen to finance Defendant Fourteen's bid at the foreclosure sale." (*Id.* at 12.) The Court did hold that Plaintiffs were not entitled to summary judgment on their claims for declaratory judgment with respect to Baker's indebtedness to Defendant Huntington. However, the Court's reasoning was limited to consideration of Plaintiffs' argument that *all* of Baker's indebtedness has been transferred to Defendant Fourteen by the assignment of the 2005 Mortgage, and that therefore all the debt was extinguished in the foreclosure. The Court did not consider Plaintiffs' equitable merger argument under *Ren-Cen*, and therefore there is no law-of-the-case to apply to the present motion.

C.   **Applicability of *Ren-Cen***

In *Ren-Cen*, the Michigan Court of Appeals held that when a single entity, holding both a senior and junior mortgage, forecloses on the junior mortgage, the mortgages merge as a matter of

5

law and the debt due on the senior mortgage is extinguished. *Ren-Cen*, 377 N.W.2d at 435–36. "Equity, however, will generally prevent a merger if the parties did not intend a merger, and an intent to avoid a merger will ordinarily be inferred where it is in the interest of the person holding the various estates to keep them separate." *Id.* at 436 (citing *Quick v. Raymond*, 116 Mich. 15, 18–19, 74 N.W.2d 189 (1898)).

In *Ren-Cen*, the court held that equity would not prevent a merger in interests where the holder of the junior and senior liens significantly underbid the value of the mortgaged property. By holding the senior mortgage, the lien-holder could effectively prevent competitive bidding, because no other investor could afford to take the property subject to the senior mortgage. Thus the lien-holder is able to obtain both the property at a depressed price (through the foreclosure), the right to sue for deficiency (because it still holds the senior mortgage), and the benefit of a subsequent sale of the property at fair market value. The court reasoned that preventing a merger of the mortgages would therefore allow the holder to obtain a double recovery, and that such a result was not a just use of the court's equitable powers.

Though stated differently in their respective briefs, the parties argue that in order for the holding of *Ren-Cen* to apply to this case (1) Defendants Huntington and Fourteen must be treated as a single entity; and (2) Defendant Fourteen bid significantly less than the true value of the Baker property at the sheriff's sale. Because the Court finds that Defendants should not be treated as a single entity, summary judgment in their favor is appropriate.

1. <u>Corporate Alter Egos</u>

Michigan law requires that separate corporate identities should generally be respected, and that one corporation will be treated as the alter ego of another only to prevent fraud or injustice. *In*

*re RCS Engineered Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996); *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 873 F.2d 109, 112 (6th Cir. 1989); *Wodogaza v. H & R Terminals, Inc.*, 411 N.W.2d 848, 852 (Mich. Ct. App. 1984). The so-called "corporate veil" may be pierced, and one corporation treated as the "alter ego" of the other if three elements are proved: "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Foodland Distribs. v. Al-Naimi*, 559 N.W.2d 379, 389 (Mich. Ct. App. 1996)). In determining whether one entity served as the mere instrumentality of another "each case is sui generies and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.*, 26 N.W.2d 757, 761 (Mich. 1947).

    (a)    Mere Instrumentality

Determining whether an entity has served as a mere instrumentality of another is necessarily fact intensive. *See Id.* Nevertheless, courts have established guideposts to aid in evaluating claims that an entity is a mere instrumentality. Because of the degree of control inherent in a parent-subsidiary relationship "courts have recognized that majority stock ownership and common directors and officers, alone, will not provide a sufficient basis for disregarding the fiction of [two] corporations' separate existence." *Maki v. Copper Range Co.*, 328 N.W.2d 430, 432–33 (Mich. Ct. App. 1982). "Where the assets of the subsidiary are employed for the benefit of the controlling corporation, in a manner other than as a benefit to the controlling corporation in its capacity as a shareholder, that fact supports finding that the subsidiary was a mere instrumentality of the parent." *Servo Kintetics, Inc. v Tokyo Precision Instruments Co. Ltd.*, 475 F.783, 799 (6th Cir. 2007).

Undercapitalization of a subsidiary also weighs in favor of piercing the corporate veil. *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704–05 (6th Cir. 1988). Other factors include whether "the subsidiary is the parent's exclusive distributing arm, or the parent's revenues are entirely derived from sales by the subsidiary." *Dutton Partners, LLC v. CMS Energy Corp.*, 802 N.W.2d 717, 723 (Mich. Ct. App. 2010). In sum where a parent corporation does not treat its subsidiary as separate from itself, neither should a court. *See Florence Cement Co. v. Vettraino*, 807 N.W.2d 917, 923 (Mich Ct. App. 2011).

Plaintiffs argue that Defendant Fourteen is a mere instrumentality of Defendant Huntington. Specifically, they argue that Defendant Fourteen has no employees of its own, but rather employees of Defendant Huntington are designated as officers of Defendant Fourteen. Further, Defendant Fourteen's officers work from Defendant Huntington's offices, using e-mail addresses, business cards and phone lines owned by Defendant Huntington. With regard to financial factors, Plaintiffs point to the following facts: Defendant Fourteen does not pay consideration for the mortgages assigned to it; Defendant Huntington pays the expenses of holding the properties; and Defendant Fourteen's profits are paid quarterly to Defendant Huntington. Plaintiffs also argue that in this particular case, Defendant Huntington, rather than Defendant Fourteen, sold the Baker property with its own employees, using their Huntington business cards and e-mail addresses, even though the property ostensibly belonged to Defendant Fourteen.

Defendants counter that their separate corporate existence should be respected. Defendants argue that although Defendants share office space and employees, Defendant Fourteen maintains its own financial records, and files its own tax return. Further, Defendants characterize the profits paid quarterly as a dividend to Defendant Huntington. Defendant Fourteen also had the discretion to

8

refuse to accept assignments from Defendant Huntington. Defendants conclude "the fact that [Defendant] Huntington formed [Defendant Fourteen] to protect [Defendant] Huntington from the risk of holding, foreclosing, selling, leasing, developing, and managing real estate in Michigan also is not a reason to disregard the corporations' separate existence." (Defs.' Br. 14, ECF No. 70.)

Taken together, the facts offered by Plaintiffs fall short of demonstrating that Defendant Fourteen is a mere instrumentality of Defendant Huntington. In cases where courts have found a subsidiary to be a mere instrumentality, the abuse of corporate form was much more egregious than anything alleged by Plaintiffs. *See Servo Kinetics*, 475 F.3d at 799 (subsidiary had ceased to operate as a separate entity and parent had liquidated its assets and taken over its customer base); *Grand Rapids Assocs. Ltd. P'ship v. Coop Properties, LLC*, 495 F. App'x 598, 601 (6th Cir. 2012) (subsidiary's sole occupation was subletting properties to the parent at cost, owner of parent was sole owner and decision-maker of subsidiary); *Florence Cement*, 807 N.W.2d at 922–23 (parent gave property to subsidiary without formal transfer, subsidiary reimbursed parent directly for costs incurred that were of no benefit to subsidiary, parent borrowed money to fund subsidiary in its own name, and money subsequently paid back by subsidiary in its name). While there is a significant overlap both in personnel and in the business aims of the two corporations, the Court does not find there is the type of manipulation of the corporate form necessary to prove that Defendant Fourteen is the mere instrumentality of Defendant Huntington.

(b)     Used to Commit Fraud or Wrong

Even if Defendant Fourteen is the mere instrumentality of Defendant Huntington, Plaintiffs cannot show that they are alter egos of each other because Defendant Huntington did not use Defendant Fourteen to commit a fraud or wrong. There has been no allegation—let alone a

showing—of fraud in this case. As to a wrong, Plaintiffs argue that Defendant Huntington used Defendant Fourteen to "sidestep" the foreclosure process by eliminating competitive bidding. Other than the existence of a senior mortgage held by Defendant Huntington, Plaintiffs have failed to allege that anything prevented third-parties from bidding at the sheriff's sale, let alone that Defendant Fourteen was used to affirmatively discourage competitive bidding.

Therefore, even if Defendant Fourteen was the mere instrumentality of Defendant Huntington, Plaintiffs cannot prove they should be treated as alter egos because Defendant Fourteen was not used to commit a fraud or wrong. The holding of *Ren-Cen* is therefore inapposite to this case because Defendant Huntington did not hold the 2004 and 2005 Mortgage at time of the foreclosure. Baker therefore remained indebted to Defendant Huntington for the amount secured by the 2004 Mortgage.

2. Fair Market Value of Baker Property at Time of Foreclosure Sale

The parties have submitted copious amounts of evidence in support of their positions that the property was at most worth $1.8 million (Defendants) or that the property was worth in excess of $5 to $8 million (Plaintiffs). The Court cannot weigh this evidence on a summary judgment motion, and therefore there is a genuine fact issue as to the value of the property on the date of the foreclosure.

There is, however, one valuation of the property that is not in dispute. On April 18, 2012, Defendant Fourteen sold the Baker property for $2,355,000. As explained below, in this case the Court will use its equitable powers to declare that this much debt was discharged in the foreclosure.

Defendant Fourteen's foreclosure of the 2005 Mortgage did not discharge the debt due under the 2004 Mortgage because Defendants Huntington and Fourteen are separate corporate entities, and therefore the holding of *Ren-Cen* does not apply. Thus, the Court will grant summary judgment in

10

favor of Defendants on Count I of the Amended Complaint, and grant partial summary judgment in favor of Defendants on Count II, to the extent that the security agreements remain enforceable (as explained below). The Court also grants partial summary judgment in favor of Plaintiffs to the extent they are not indebted to Defendant Fourteen, and grants summary judgment in favor of Defendants on Count III.

Although the Court holds that it cannot exercise its equitable powers to discharge the entire debt secured by the 2004 Mortgage, it cannot conclude that Plaintiffs are entitled to no equitable relief. The purpose of the *Ren-Cen* holding was to prevent a mortgagee from obtaining a double recovery. Here, Defendant Huntington was owed some $ 5 million. It assigned to Defendant Fourteen $1,856,250 of that debt. That amount of the debt was discharged when Defendant Fourteen foreclosed the 2005 Mortgage, leaving approximately $3 million in debt remaining owed to Defendant Huntington. Defendant Fourteen later sold the foreclosed property for $2,355,000. As explained above, and uncontested by Defendants, the proceeds of Defendant Fourteen's operations are paid to Defendant Huntington as a dividend. Therefore, the Court finds that the benefit of the $2,355,000 eventually inured to Defendant Huntington.

In light of this, if Defendant Huntington is able to collect the full $3 million in outstanding debt, it will in essence have achieved the recovery of a net excess of $498,750[2]. The Court therefore will use its equitable power to declare that $498,750 of the debt owed by Baker to Defendant Huntington is discharged, less Defendants' expenses in disposing of the property, in addition to the amount discharged in the 2005 foreclosure.

---

[2]$2,355,000 – $1,856,250 = $498,750.

11

**D.     Remaining Claims**

Plaintiffs' remaining claims (Counts IV–VIII) are predicated on the assumption that Baker was no longer indebted to Defendant Huntington following the foreclosure of the 2005 Mortgage. Because the Court has found that Baker remained indebted to Defendant Huntington, Defendants are entitled to summary judgment on the remaining claims.

**E.     Remaining Issues for Trial**

Neither of the parties' cross motions sought judgment on Defendants' counter-claims. These, therefore, remain for trial. In light of this Court's ruling that Baker remains indebted to Defendant Huntington and the security agreements remain enforceable, it remains to be determined how much debt remains after Defendant Huntington enforced its rights with respect to the security agreements. Defendants must be prepared to prove, in concise a way as possible, the total debt due, including credit for amounts received in the disposition of any secured property.

**III.**

For the foregoing reasons, the Court grants-in-part Plaintiffs' motion for summary judgment with respect to Count II and denies the motion with respect to the remaining claims. The Court denies-in-part Defendants' motion with respect to Count II and grants the motion with respect to the remaining claims.

The Court will enter an Order consistent with this Opinion.


Dated:  June 12, 2014                              /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE