UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAGS II, LLC and G2BK, LLC,

       Plaintiffs,

v.

       Case No. 1:13-cv-393

THE HUNTINGTON NATIONAL
BANK, N.A. and FOURTEEN CORP.,

       HON. ROBERT HOLMES BELL

       Defendants.
                                   /

**O P I N I O N**

This matter is before the Court on Plaintiffs DAGS II, LLC and G2BK, LLC's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 97.) Defendants Huntington National Bank, N.A. (Huntington) and Fourteen Corp. (Fourteen) have filed a response (ECF No. 102), to which Plaintiffs have a filed a reply (ECF No. 107).

**I.**

The facts in this case have been described in detail in prior opinions issued by this Court and the Court of Appeals for the Sixth Circuit. On June 12, 2014, this Court issued an opinion granting in part and denying in part Plaintiffs' and Defendants' cross-motions for summary judgment. (*DAGS II, LLC v. Huntington Nat'l Bank*, No. 1:13-cv-393, 6/12/ 2014 Op., ECF No. 81.) In that Opinion, the Court addressed two questions: (1) whether

Defendant Fourteen should be considered the alter ego of Defendant Huntington; and (2) whether Defendant Fourteen significantly underbid the value of the property at issue at the foreclosure sale. As to the first question, the Court held that Defendants were not alter egos of each other, and granted summary judgment in Defendants' favor. (*Id.* at 6.) As to the second question, the Court noted that "there is a genuine fact issue as to the value of the property on the date of the foreclosure." (*Id.* at 10.)

The Sixth Circuit subsequently issued an opinion vacating and remanding this Court's June 12, 2014 opinion. *DAGS, II LLC v. Huntington Nat'l Bank*, 616 F. App'x 830 (6th Cir. 2015). Following the Sixth Circuit's opinion, the Court held a status conference. Plaintiffs then filed a motion for partial summary judgment asking that this Court interpret the Sixth Circuit's opinion and make two findings: (1) that the Sixth Circuit has already held that "Fourteen is a mere instrumentality of Huntington." In the alternative, Plaintiffs argue that this Court should itself hold that Fourteen is a mere instrumentality of Huntington; and (2) that Plaintiffs may prove that a wrong/injury occurred for purposes of the veil piercing analysis by showing either that the fair market value of the Baker Property and the other collateral was equal to or greater than the total remaining debt, or that Fourteen acquired the Baker Property for less than its fair market value.

**II.**

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes. *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252. The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

**A. Was Fourteen a Mere Instrumentality of Huntington?**

**1. Background**

In early 2011, Baker Lofts owed Defendant Huntington approximately $5 million in outstanding bank notes. These notes were secured by various security agreements, in addition to two mortgages (the 2004 Mortgage and the 2005 Mortgage) on the Baker properties. Defendant Fourteen is a wholly owned subsidiary of Defendant Huntington, and is primarily dedicated to holding "real estate that was pledged to secure mortgage loans by Huntington." (Defs.' Resp. to Pls.' Second Discovery Reqs., ECF No. 72-1, PageID.1252.) In May of 2011, Huntington assigned the 2005 Mortgage to Defendant Fourteen.

In 2011, Baker defaulted and Fourteen initiated foreclosure proceedings against it. In a previous Opinion, the Court made a finding that "Defendant Huntington transferred $1,856,250.00 of Baker's debt to Defendant Fourteen to finance Defendant Fourteen's bid at the foreclosure sale." (12/31/2013 Am. Op. 12, ECF No. 50.) Fourteen purchased the Baker properties for that amount, and in April 2012, sold the Baker properties to GR Developments, LLC for $2,355,000. After selling the property, Fourteen paid Huntington the proceeds as a dividend. Defendant Huntington had retained the 2004 Mortgage in addition to various other security agreements it had obtained on Baker's debt. After the foreclosure sale, Huntington believed that Baker was still indebted to it for approximately $3 million. Huntington foreclosed on the other security interests it had obtained on Baker's debt. (*Id.* at 2.)

Plaintiffs argued that Fourteen was able to purchase the Baker properties for far-below market value because the properties were still encumbered with the 2004 Mortgage held by

Huntington. Under Michigan law, "'if the holder of both a junior and senior mortgage forecloses the junior and buys it on foreclosure sale it is generally held that, in the absence of an agreement to the contrary, the mortgagor's personal liability for the debt secured by the first mortgage is extinguished.'" *Bd. of Trs. of Gen. Ret. Sys. of City of Detroit v. Ren-Cen Indoor Tennis & Racquet Club*, 377 N.W.2d 432, 434 (Mich. Ct. App. 1985) (quoting Osborne, Mortgages (2d ed.), § 274, p. 553). Accordingly, Plaintiffs argued that because Huntington and Fourteen—allegedly alter egos of each other—held both the junior and senior mortgage, any remaining debt owed by Baker to Huntington was extinguished at the time of the foreclosure sale. Defendants' response cited several reasons why Fourteen and Huntington were separate entities that should be treated as such. (Defs.' Resp. to Pls.' Mot. Summ. J. 19-22, ECF No. 76.)

### 2. June 12, 2014 Opinion

In the Court's June 12, 2014 Opinion, the Court addressed the above arguments, which the parties raised in cross-motions for summary judgment. (ECF Nos. 70, 71.) The Court noted that under Michigan law, when determining whether two corporate entities may be treated as alter egos of each other:

> [S]eparate corporate identities should generally be respected, and . . . one corporation will be treated as the alter ego of another only to prevent fraud or injustice . . . The so-called "corporate veil" may be pierced, and one corporation treated as the "alter ego" of the other if three elements are proved: "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss."

5

(6/12/2014 Op. 6-7) (quoting *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007)) (citing Michigan law).

Analyzing the first factor, the Court made a finding that "the facts offered by Plaintiffs fall short of demonstrating that Defendant Fourteen is a mere instrumentality of Defendant Huntington. In cases where courts have found a subsidiary to be a mere instrumentality, the abuse of corporate form was much more egregious than anything alleged by Plaintiffs." (*Id.* at 9.) The Court further found that even if Fourteen was a mere instrumentality of Huntington, Plaintiffs' claim would still fail on the second factor of the test established in *Servo*: Huntington did not use Fourteen to commit a fraud or wrong. The Court found that because the two entities could not be treated as alter egos, the remaining debt Baker owed to Huntington was not extinguished at the foreclosure sale, and summary judgment was granted in favor of Defendants as to this issue. (*Id.* at 12.)

### 3. Sixth Circuit Opinion

The Sixth Circuit reversed this Court's grant of summary judgment in favor of Defendants on this issue and analyzed whether Huntington and Fourteen were alter egos of each other. The Court of Appeals began by stating:

> Here, reviewing the evidence and drawing all inferences in the Plaintiffs' favor, a genuine issue of fact exists as to whether Huntington's corporate veil should be pierced. First, Fourteen *is* a mere instrumentality of Huntington.

*DAGS II*, 616 F. App'x at 838 (emphasis added). The court went on to discuss facts supporting Plaintiffs' argument that Fourteen is a mere instrumentality of Huntington. The court did not address any facts offered by Defendant which allegedly demonstrate that

Fourteen was not a mere instrumentality of Huntington. In the next paragraph, the court stated:

> Furthermore, the actions Huntington took regarding the Baker Lofts' debt and property at issue further indicate that Fourteen is a mere instrumentality of Huntington.

*Id.* In closing, the court again stated: "Taken together, these facts indicate that Fourteen was a mere instrumentality of Huntington." *Id.* at 839.

### 4. Analysis

The parties dispute whether the Court of Appeals made a definitive finding that Fourteen is a mere instrumentality of Huntington and, thus, whether the first element of the alter ego analysis has been satisfied.

Plaintiffs note the "Sixth Circuit's unequivocal statement on page 16 of the opinion that 'Fourteen is a mere instrumentality of Huntington.'" (Br. in Support of Pls.' Mot. for Partial Summ. J. 2, ECF No. 98.) Plaintiffs believe that the Sixth Circuit's opinion is best summarized as follows:

> A genuine issue of fact exists as to whether Huntington's corporate veil should be pierced, but not as to the first element. That element—whether Fourteen was a mere instrumentality of Huntington—is clearly established by the undisputed evidence. Rather, the genuine issue of fact relates to the second and third elements of the veil piercing analysis.

(*Id.*) Plaintiffs further argue that, even if the Sixth Circuit did not definitively conclude that Fourteen is a mere instrumentality, based on the Sixth Circuit's guidance, this Court should independently arrive at that conclusion.

In response, Defendants argue that the Sixth Circuit never concluded as a matter of law that Fourteen was a mere instrumentality of Huntington. (Defs.' Resp. to Pls.' Mot. for Partial Summ. J. 10-11, ECF No. 102.) Defendants also contend that this Court should not independently determine that Fourteen is a mere instrumentality of Huntington because: Fourteen pays the bills associated with the property that it owns; Fourteen does not pay debts allocable to Huntington that are not allocable to Fourteen; Huntington's executive leadership does not provide day-to-day direction to Fourteen, and Fourteen has discretion to make its own decisions; Huntington and Fourteen do not have identical boards of directors; only officers of Fourteen have the authority to execute documents on behalf of Fourteen; and Fourteen maintains separate corporate records, files a tax return separate from Huntington, files its own annual reports with the State of Michigan, and maintains its own bank accounts. (*Id.* at 13-14.)

The Court agrees with Plaintiffs that, even if the Sixth Circuit did not definitively conclude that Fourteen is a mere instrumentality of Huntington, its direction to this Court strongly indicated that such a finding was proper. Following the Sixth Circuit's guidance, the Court finds as a matter of law that Fourteen is a mere instrumentality of Huntington. The Sixth Circuit focused on "the actions Huntington took regarding the Baker Lofts' debt and property at issue" to support its finding that the facts "indicate that Fourteen was a mere instrumentality of Huntington." *Id.* at 838-39. It is not disputed that Huntington assigned to Fourteen just enough debt so that "Fourteen could make its own bid at the sheriff's sale." (Wilk Dep. 37, ECF No. 27-1.) Accordingly, the Sixth Circuit found that "Huntington and

Fourteen were working as a single entity to determine how much Fourteen should bid on the property at the sheriff's sale–and, correspondingly, how much debt Huntington should assign to Fourteen–to help Fourteen purchase the property." *DAGS II*, 616 F. App'x at 838-39. It is also not disputed that, after Fourteen purchased the property at the sheriff's sale and sold it to a third party, the proceeds were paid directly to Huntington as a dividend. Thus, the Sixth Circuit stated that, "for all intents and purposes, Fourteen's bid at the sheriff's sale was also Huntington's. Fourteen did not pay Huntington for the capital Fourteen used to credit bid at the 2011 sheriff's sale or for the partial release of the 2004 mortgage." *Id.* at 839. Moreover, the Sixth Circuit, citing an affidavit of Defendants' employee, noted that "in correspondence leading up to Fourteen's sale of the property, employees acting on behalf of Huntington treated the Baker Lofts' property as its own rather than Fourteen's." *Id.* The Sixth Circuit cited *Papo v. Aglo Restaurants of San Jose, Inc.*, 386 N.W.2d 177 (Mich. Ct. App. 1986), which held that the trial court's conclusion that a subsidiary was a mere instrumentality of the parent company was "particularly justified" because the parent company took possession of the subsidiary's assets and treated them as its own without any consideration having been paid to the subsidiary. *Id.* at 185.

Relying on the conclusions the Sixth Circuit drew from these undisputed facts, the Court finds that Fourteen was a mere instrumentality of Huntington. While Defendants argue that Huntington's executive leadership does not provide day-to-day direction to Fourteen, and that Fourteen has discretion to make its own decision, the evidence indicates that in this instance, Huntington provided direction to Fourteen, and Fourteen did not make its own

9

decisions. *See DAGS II*, 616 F. App'x at 839 ("[F]or all intents and purposes, Fourteen's bid at the sheriff's sale was also Huntington's."). Moreover, the Sixth Circuit initially stated that "Fourteen is an instrumentality of Huntington" based on the following facts that it found significant: Fourteen and Huntington share the same office space and phones; employees working for Fourteen have Huntington email addresses and business cards; all of Fourteen's corporate expenses are paid by Huntington; when Huntington employees work on projects for Fourteen, they do not allocate their time differently or otherwise account for the fact that they were working for Fourteen rather than Huntington; Huntington appoints its officers as officers of Fourteen and Fourteen's officers and employees are paid by Huntington, receiving no compensation from Fourteen; and funds paid to Fourteen are transferred directly to Huntington on a quarterly basis as dividends. *Id.* at 838.

For these reasons, Plaintiffs' motion for summary judgment on this issue will be granted.

**B. Proving a Wrong or Injury**

This Court's June 12, 2014 opinion also found that Huntington did not use Fourteen to commit a fraud or wrong. The Sixth Circuit disagreed, stating that "fact questions exist regarding whether Fourteen was used to commit a 'fraud or wrong' for the purpose of pierce-the-corporate-veil liability." *DAGS II*, 616 F. App'x at 839. Plaintiffs do not contend that Defendants committed a fraud. "Regarding the element of a wrong, any illegality would suffice to establish this element. In fact, even conduct short of the illegal could support element two. Michigan law does not require a showing of fraud or illegality before the

10

corporate form will be disregarded." *Mich. Laborers' Health Care Fund v. Taddie Constr., Inc.*, 119 F. Supp. 2d 698, 703 (E.D. Mich. 2000). For instance, "a breach of contract can satisfy this prong of the test[.]" *Rogel v. Dubrinsky*, 337 F. App'x 465, 470 (6th Cir. 2009) (citing *Servo Kinetics*, 475 F.3d at 799-800). Still, there "must be a basis for concluding that Defendants used the device of an ostensibly separate corporation to commit [the] wrong." *Johnson Controls, Inc. v. J.F. Dunn Enters., Inc.*, No. 08:12045, 2009 WL 415706, at *4 (E.D. Mich. Feb. 19, 2009).

Plaintiffs now ask this Court to make a legal determination that "Plaintiffs may prove that a wrong/injury occurred for purposes of the veil piercing analysis by showing either 1) that the fair market value of the Baker Property and the other collateral was equal to or greater than the total remaining debt, or 2) that Fourteen acquired the Baker Property for less than its fair market value." (Pls.' Mot. for Partial Summ. J. 1, ECF No. 97.) Plaintiffs contend that the Sixth Circuit identified these two methods as a way to determine whether Huntington committed a wrong resulting in injury, and seek "this Court's confirmation that proof under either of these methods will result in a determination that the elements of veil piercing have been met." (Br. in Support of Pls.' Mot. for Partial Summ. J. 7.)

**1. Fair Market Value in Comparison to Total Debt Owed**

When discussing whether a fraud or wrong was committed, the Sixth Circuit examined the distinctions between the Michigan Court of Appeals' holdings in *Ren-Cen* and *Federal Deposit Insurance Co. v. Torres*, No. 311277, 2014 WL 309787, at *8 (Mich. Ct. App. Jan. 28, 2014). *See DAGS II*, 616 F. App'x at 840-41.

In *Ren-Cen*, the same plaintiff loaned the defendant money on two separate occasions and, in return, received promissory notes secured by two separate mortgages on the same property. 377 N.W.2d at 433. The plaintiff foreclosed its second mortgage on the property and purchased the property at the foreclosure sale. *Id.* The true value of the property was greater than $3 million. *Id.* The plaintiff purchased the property for $500,000, and then sued the defendant for the remaining $1.1 million owed on the first mortgage. *Id.* The court was concerned that the plaintiff's actions would "enable it to obtain, in effect, a double recovery" because the true value of the property received was greater than the remaining debt owed. *Id.* at 436.

In *Torres*, the plaintiff held two separate mortgages on the property, foreclosed on the second mortgage, and purchased the property at the foreclosure sale. Unlike in *Ren-Cen*, however, the true value of the property the plaintiff purchased was less than the remaining debt owed to the plaintiff. Thus, the court stated, "the equitable concern of a plaintiff seeking a 'double recovery' by holding onto property that was worth well in excess of the amount owed is not present in the instant case." 2014 WL 309787, at *8.

The Sixth Circuit's opinion in this case noted the importance of the factual differences between *Ren-Cen* and *Torres*, and implied that if the fair market value of the property purchased by Defendants exceeded the remaining debt owed to Defendants, then Plaintiffs have proven the second element—Huntington used Fourteen to commit a wrong. *See DAGS II*, 616 F. App'x at 840, 841 ("Here, unlike *Torres*, questions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total

12

remaining debt . . . . Thus, a question of fact exists as to whether Huntington used Fourteen to commit a wrong for purposes of piercing the corporate veil."). Plaintiffs ask this Court to confirm that, if this fact is proved, Plaintiffs will have established that a wrong resulting in injury occurred.

The Court agrees that if the fair market value of the property purchased by Defendants exceeded the total remaining debt owed to Defendants, then Plaintiffs have shown that a wrong was committed. This is consistent with the Sixth Circuit's direction to this Court. Defendants would have taken action to receive the "double recovery" that the court in *Ren-Cen* was concerned about, and that the Sixth Circuit stated was "improper under Michigan law." *Id.* at 840. Moreover, if Defendants received a "double recovery" at Plaintiffs' expense, then Plaintiffs will have suffered an injury.

**2. Fair Market Value in Comparison to Fourteen's Bid**

Plaintiffs also seek confirmation "[t]hat a showing that the fair market value of the Baker Property was greater than Fourteen's bid indicates that a wrong occurred for purposes of the veil-piercing analysis." (Br. in Support of Pls.' Mot. for Partial Summ. J. 1.) Plaintiffs can prove that a wrong was committed if Defendants' bid on the property was not made "fairly and in good faith." *See* Mich. Comp. Laws § 600.3228 (allowing a mortgagee to purchase property at a sheriff's sale if the purchase of the premises is made "fairly and in good faith"). However, while "§ 600.3228 requires fairness and good faith, it does not, by its terms, require a fair market value bid." *Rubin v. Fannie Mae*, 587 F. App'x 273, 276 (6th Cir. 2014). That is because, "as a purchaser under the foreclosure sale, a mortgagee stands

13

in the same position as any other purchaser," *Pulleyblank v. Cape*, 446 N.W.2d 345, 347 (Mich. Ct. App. 1989) (citing *Hogsett v. Ellis*, 17 Mich. 351, 363 (1868)), and other purchasers are able to bid on property at sheriff's sales for more or less than the fair market value. As the United States Supreme Court has recognized, "the price which property commands at a forced sale may be hardly even a rough measure of its value." *Gelfert v. Nat'l City Bank of New York*, 313 U.S. 221, 233 (1941).

Thus, contrary to Plaintiffs' assertion, proving that Defendants' bid on the property was for less than its fair market value does not by itself establish that Defendants have committed a "wrong." This is supported by the Sixth Circuit's opinion in this case, which stated:

> Finally, the parties do not appear to dispute that if Fourteen was able to purchase property below fair market value *because of the Defendants' wrongful maneuvering*, the Plaintiffs suffered an injury for purposes of veil-piercing liability based on the Defendants' actions.

*DAGS II*, 616 F. App'x at 841 (emphasis added). The Court of Appeals did not state that the act of purchasing the property below fair market value was itself a wrong; it distinguished the act of purchasing property below fair market value from other alleged "wrongful maneuvering" allowing Defendants to do so.

Lastly, while the Sixth Circuit stated that "the parties do not appear to contest that if Fourteen was able to purchase the property below fair market value because of the Defendants' wrongful maneuvering, the Plaintiffs suffered an injury for the purpose of veil-

piercing liability based on the Defendants' actions," Defendants now do contest this. Defendants state:

> Even if Fourteen's bid was *substantially less than the true value* of the Baker Property at the time of [the] sheriff's sale, it still is possible that Plaintiffs suffered no injury. If Fourteen had bid substantially less than the true value of the Baker Property, then *Plaintiffs* also had the opportunity to purchase or redeem the property for less than the property was worth. Although Plaintiffs argue that the existence of the first mortgage chilled bidding with respect to third-party bidders, *Plaintiffs* were not so injured because, again, Huntington expressly offered to release the first mortgage on the Baker Property if Plaintiffs redeemed the property.

(Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. 17-18) (emphasis in original).

The fact that Plaintiffs could have purchased the property for the price that Fourteen paid does not show that Plaintiffs were unharmed. The fact of the matter is that Plaintiffs did not purchase the property, and their debt was credited in the amount of approximately $1.8 million. If Defendants' actions caused Plaintiffs' debt to be reduced by a lesser figure than it otherwise would have been, then Plaintiffs have suffered an injury or unjust loss.

On the other hand, the fact that Fourteen bid less than the fair market value does not in itself establish that Plaintiffs suffered an injury or unjust loss. As the Sixth Circuit indicated, the injury or unjust loss must have resulted from Defendants' allegedly wrongful actions. If, regardless of Defendants' actions, Plaintiffs would not have received a higher price for the property, then Defendants have not suffered an injury or unjust loss resulting from Defendants' allegedly wrongful actions. Thus, under this theory, the burden rests with Plaintiffs to show that "a higher price should have been obtained upon the sale of the

15

property," *see Stewart v. Eaton*, 283 N.W. 651, 658 (Mich. 1939), but for Defendants' wrongful actions.

## IV.

In summary, the Court has made the following findings: (1) Fourteen is a mere instrumentality of Huntington; (2) if the fair market value of the property purchased by Defendants exceeded the remaining debt owed to Defendants, then Plaintiffs have shown that a wrong was committed; (3) if Defendants received a "double recovery" at Plaintiffs' expense, then Plaintiffs have suffered an injury; (4) proving that Fourteen purchased the property for below fair market value does not in itself establish that a wrong was committed; (5) if Fourteen was able to purchase the property below fair market value because of the Defendants' wrongful maneuvering, and a higher price would otherwise have been obtained, then Plaintiffs suffered an injury.

An order will enter consistent with this opinion.


Dated: March 29, 2016                    /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         UNITED STATES DISTRICT JUDGE