UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAGS II, LLC and G2BK, LLC,

        Plaintiffs,

                                    Case No. 1:13-cv-393

v.

                                    HON. ROBERT HOLMES BELL

THE HUNTINGTON NATIONAL
BANK, N.A. and FOURTEEN CORP.,

        Defendants.

_____/

## O P I N I O N

This matter is before the Court on Plaintiffs DAGS II, LLC ("DAGS") and G2BK,

LLC's ("G2BK") fourth motion for summary judgment. (ECF No. 118.) Plaintiff DAGS is

the assignee of Baker Lofts, LLC ("Baker Lofts"), which filed for bankruptcy in January

2012. Plaintiff G2BK is the current owner of a liquor license previously held by Baker Lofts.

Defendant Huntington National Bank, N.A. ("Huntington") is a banking association that, in

early 2011, was owed approximately $5 million in outstanding bank notes by Baker Lofts.

These notes were secured by various security agreements, in addition to two mortgages (the

"2004 Mortgage" and the "2005 Mortgage"). Defendant Fourteen is a wholly owned

subsidiary of Defendant Huntington, and is primarily dedicated to holding real estate that was

pledged to secure mortgage loans by Huntington.

In May of 2011, Huntington assigned the 2005 Mortgage to Fourteen, and continued

to exercise control over the 2004 Mortgage. Fourteen subsequently purchased the Baker

Lofts Property for $1,856,250.00 at a sheriff's sale. In April 2012, Fourteen sold the Baker Lofts Property for $2,355,000.00, and paid Huntington the proceeds from the sale as a dividend. After the foreclosure sale, Huntington believed that Baker Lofts still owed approximately $3 million. Huntington thus foreclosed on the other security interests it had obtained on Baker Lofts' debt.

The case turns on whether Huntington and Fourteen are the legal "alter egos" of each other. If so, then at the time of foreclosure, Huntington was effectively the holder of both the 2004 and 2005 Mortgages and, under Michigan law, the remaining debt owed by Baker Lofts to Huntington was extinguished following the sheriff's sale. *See Bd. of Trs. of Gen. Ret. Sys. of City of Detroit v. Ren-Cen Indoor Tennis & Racquet Club*, 377 N.W.2d 432, 434 (Mich. Ct. App. 1985) ("[I]f the holder of both a junior and senior mortgage forecloses the junior and buys it on foreclosure sale it is generally held that, in the absence of an agreement to the contrary, the mortgagor's personal liability for the debt secured by the first mortgage is extinguished."). In a June 12, 2014 Opinion, the Court noted that under Michigan law, when determining whether two corporate entities may be treated as alter egos of each other:

> [S]eparate corporate identities should generally be respected, and . . . one corporation will be treated as the alter ego of another only to prevent fraud or injustice . . . The so-called 'corporate veil' may be pierced, and one corporation treated as the 'alter ego' of the other if three elements are proved: "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss."

2

(6/12/2014 Op. 6-7, ECF No. 81) (quoting *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing Michigan law)). The Court's June 2014 opinion granted summary judgment in favor of Defendants, finding that Huntington and Fourteen were not alter egos.

In July 2015, the Sixth Circuit Court of Appeals issued an opinion vacating this Court's June 2014 opinion. *See DAGS II, LLC v. Huntington Nat'l Bank*, 616 F. App'x 830 (6th Cir. 2015). As to the first factor used to determine whether two entities are alter egos of each other, the Sixth Circuit indicated that "Fourteen is a mere instrumentality of Huntington."[1] *Id.* at 834. As to the second factor, the Sixth Circuit concluded that "fact questions exist regarding whether Fourteen was used to commit a 'fraud or wrong' for the purpose of pierce-the-corporate veil liability." *Id.* at 839. Specifically, the court stated that "questions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt . . . [and t]hus, a question of fact exists as to whether Huntington used Fourteen to commit a wrong for purposes of piercing the corporate veil." *Id.* at 840, 841. Regarding the third factor, the Sixth Circuit stated that "the parties do not appear to contest that if Fourteen was able to purchase the property below fair market value because of the Defendants' wrongful maneuvering, the Plaintiffs suffered an injury for the purpose of veil-piercing liability based on Defendants' actions." *Id.* at 841.

---

[1] Whether the Sixth Circuit definitively determined that Fourteen is a mere instrumentality of Huntington was an issue of contention between the parties. In a subsequent opinion, this Court found that "even if the Sixth Circuit did not definitively conclude that Fourteen is a mere instrumentality of Huntington, its direction to this Court strongly indicated that such a finding was proper." (3/29/2016 Op. 8, ECF No. 114.)

Following the Sixth Circuit's opinion, Plaintiffs filed their third motion for summary judgment. (ECF No. 97.) That motion requested, *inter alia*, that this Court provide guidance to Plaintiffs as to how they may "prove that a wrong/injury occurred for purposes of the veil-piercing analysis." (*Id.* at 1.) On March 29, 2016, the Court issued an Opinion which made the following findings:

> (1) Fourteen is a mere instrumentality of Huntington; (2) if the fair market value of the property purchased by Defendants exceeded the remaining debt owed to Defendants, then Plaintiffs have shown that a wrong was committed; (3) if Defendants received a "double recovery" at Plaintiffs' expense, then Plaintiffs have suffered an injury; (4) proving that Fourteen purchased the property for below fair market value does not in itself establish that a wrong was committed; (5) if Fourteen was able to purchase the property below fair market value because of the Defendants' wrongful maneuvering, and a higher price would otherwise have been obtained, then Plaintiffs suffered an injury.

(3/29/2016 Op. 16, ECF No. 114.)

Two weeks later, Plaintiffs filed their fourth motion for summary judgment, which is now before the Court. (ECF No. 117.) Defendants have filed a response (ECF No. 119), to which Plaintiffs filed a reply (ECF No. 124).

## I.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to

determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

## II.

Plaintiffs' motion for summary judgment contends that there are no remaining issues of fact as to whether the second and third elements in the alter ego analysis have been satisfied.[2] Thus, according to Plaintiffs, Huntington and Fourteen were alter egos of each

---

[2] Plaintiffs' motion for summary judgment states that "Plaintiffs believe the analysis of the second and third elements of the veil piercing analysis are appropriately handled together . . . Accordingly, they will be discussed together in this brief." (Pls.' Br. in Support of Mot. Summ. J. 3 n.1, ECF No. 118.) As the Sixth Circuit's opinion noted, "Michigan courts will pierce the corporate veil only when (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an injury or unjust

(continued...)

other and any remaining debt owed by Baker Lofts to Huntington was extinguished at the time of the sheriff's sale. Plaintiffs further contend that such a finding leads to the conclusion that Defendants wrongfully sold "or otherwise control[led] the TIF, liquor license or rents." (Pls.' Br. in Support of Mot. Summ. J. 1, ECF No. 118.)

## A. Questions of Fact Exist As To Whether a Wrong Was Committed

As noted above, this Court, following the Sixth Circuit's guidance and Michigan case law, previously determined that "if the fair market value of the property purchased by Defendants exceeded the remaining debt owed to Defendants, then Plaintiffs have shown that a wrong was committed." (3/29/2016 Op. 16); *see also DAGS II*, 616 F. App'x at 840, 841 ("[Q]uestions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt . . . Thus, a question of fact exists as to whether Huntington used Fourteen to commit a wrong for purposes of piercing the corporate veil.").

Both this Court and the Sixth Circuit have previously concluded that questions of fact exist as to the fair market value of the Baker Lofts Property. (*See* 6/12/2014 Op. 10 ("[T]here is a genuine fact issue as to the value of the property on the date of the foreclosure.")); *DAGS II*, 616 F. App'x at 840 ("[Q]uestions of fact remain as to whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt."). Still, Plaintiffs disagree. Plaintiffs contend that in determining the value of the property, in

---

(...continued)

loss." Plaintiffs have offered no authority for their assertion that the last two elements are best considered together. While they may be somewhat related, Plaintiffs are required to prove both elements 2 and 3.

addition to the Baker Lofts Property, the Court should consider other items of collateral held by Defendant.  These items include a Brownfield reimbursement agreement with the City of Holland that provided ongoing financing through a tax-increment financing plan (the "TIF"), a liquor license that Baker Lofts had obtained from the State of Michigan, and an assignment of rents covering the Baker Lofts Property. Plaintiffs also argue that the value of the Baker Lofts Property can be determined as a matter of law by adding the amount bid by Fourteen at the sheriff's sale to the value of the 2004 Mortgage.

### 1. The Value of the TIF, Liquor License, and Rents Will Not be Considered in Determining Whether a Wrong Was Committed

When discussing "whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt" owed by Baker Lofts, both this Court and the Sixth Circuit have assumed that the Baker Lofts Property is the only relevant item of property. *See DAGS II*, 616 F. App'x at 840. Plaintiffs now argue that if the cumulative value of the Baker Lofts Property, the TIF, the liquor license, and the rent proceeds exceeded the remaining debt owed to Defendants, then Plaintiffs have shown that a wrong was committed.

The Court finds that the Baker Lofts Property is the only relevant item of property to this analysis. The value of the property is relevant to the Court's consideration of whether a wrong was committed because of the concern that Huntington would "receive a windfall" if the property it received was worth more than the total debt that was owed to it, and yet it still "pursued the deficiency under a separate note[.]" *Id.* Conversely, if the value of the

7

property received by Huntington was less than the total debt owed to it, the equitable concern of Huntington receiving a windfall by pursuing the deficiency under a separate note does not exist. *See Fed. Deposit Ins. Co. v. Torres*, No. 311277, 2014 WL 309787, at *8 (Mich. Ct. App. Jan. 28, 2014). Put simply, if, after the sheriff's sale, Huntington was still owed money, it was entitled to pursue the deficiency by collecting on the collateral that it held. If it was not still owed money, then Huntington should not have attempted to collect on a deficiency that did not exist.

The TIF, liquor license,[3] and rent proceeds were items of collateral held "as security for the Baker Loans" in the event of Baker Lofts' default. (Am. Compl. ¶ 17(f), (g); TIF Assignment ¶ 6, ECF No. 1-3; Security Agreement ¶ 2, ECF No. 1-4.) If Huntington was still owed money, Huntington was entitled to collect on this collateral. While Plaintiffs can bring (and have brought) a claim for conversion alleging that Defendants wrongfully exercised control over these items of collateral after the debt was satisfied, the fact that Huntington did possess and exercise control over this collateral has no bearing on the key inquiry here: whether the debt was, in fact, satisfied, upon the sheriff's sale.

This is distinguishable from the Baker Lofts Property. Upon its purchase, ownership of the Baker Lofts Property transferred to Defendants. Defendants received a tangible asset from Baker Lofts at the sheriff's sale. Unlike the other items of collateral, the value of this asset may fairly be credited against the total debt that was owed by Baker Lofts and, thus, it

---

[3]The Court acknowledges Defendant's contention that Huntington "did not possess, control, or own the liquor license at the time of the sheriff's sale, and that remains true today." (Def.'s Resp. to Mot. Summ. J. 17.)

is relevant to determining whether the debt owed to Huntington was satisfied. Moreover, the Court notes that neither *Torres*, *Ren-Cen*, nor the Sixth Circuit's opinion in this case examined items of collateral outside of the property that was foreclosed on in determining "whether the fair market value of the property at the time of the foreclosure sale was less than the total remaining debt."

### 2. The Court Will Not Follow Plaintiffs' Proposed Method for Determining the Value of the Baker Lofts Property

Plaintiffs also argue that there are no factual issues to be determined regarding the value of the Baker Lofts Property at the time of the sheriff's sale. Plaintiffs contend that by adding the purchase price of the Baker Lofts Property ($1,856,250.00) to the value of 2004 Mortgage ($3,331,779.06), the Court "can, as a matter of law, conclude that the value of the Baker Property on the date of the sheriff's sale was $5,188,029.06." (Br. in Support. of Mot. Summ. J. 7.)

The Court disagrees. First, as Michigan courts have recognized, the fair market value of property sold at a foreclosure is not a legal determination. Rather, a "trial court's findings regarding the fair market value of a property sold by foreclosure by advertisement are factual matters." *NPB Mortg., L.L.C. v. Golliday*, No. 301830, 2012 WL 516763, at *1 (Mich. Ct. App. Feb. 16, 2012) (citing *Stewart v. Eaton*, 283 N.W. 651 (Mich. 1939)). And second, as this Court stated in its March 29, 2016, opinion, the amount bid at the sheriff's sale is not the best indicator of fair market value. That is because at a foreclosure sale, "a mortgagee stands in the same position as any other purchaser," and can therefore bid either more or less than

9

the property's fair market value. *See Pulleyblank v. Cape*, 446 N.W.2d 345, 347 (Mich. Ct.

App. 1989) (citing *Hogsett v. Ellis*, 17 Mich. 351, 363 (1868)). As the Eastern of District of

Michigan recently stated:

> Fair-market value is meant to reflect the "actual" value of a thing—hence the
> use of the word "fair." This means that fair market value "reflects the amount
> at which property would change hands between a willing [buyer] and a willing
> [seller], neither being under any compulsion to enter into the transaction. . . ."
> *Razavi v. Comm'r of Internal Revenue*, 74 F.3d 125, 127 (6th Cir. 1996). Fair-
> market value is determined by value on the open market, not by value at a
> foreclosure sale, as "the price which property commands at a forced sale may
> be hardly even a rough measure of its value." *Gelfert v. Nat'l City Bank of New
> York*, 313 U.S. 221, 223 (1941).

> This Court declines to use a sheriff's sale, in which the property was purchased
> by the very entity that owned the mortgage, as a proxy for fair-market value.
> Other courts in this jurisdiction have also declined to do so. *See McGhee v.
> Citimortgage, Inc.*, 2011 WL 6736472 (E.D. Mich. Dec. 19, 2011) (Lawson,
> J.)

*Golden v. Wells Fargo Bank, N.A.*, No. 11-15558, 2012 WL 1130547, at *2 (E.D. Mich. Apr.

4, 2012).

Because the value of the Baker Lofts Property cannot be determined by simply adding

two numbers together, it is an issue best left for trial. As the Court noted in its June 12, 2014

opinion, "[t]he parties have submitted copious amounts of evidence in support of their

positions that the property was at most worth $1.8 million (Defendants) or that the property

was worth in excess of $5 million to $8 million (Plaintiffs). The Court cannot weigh this

evidence on a summary judgment motion[.]" (6/12/2014 Op. 10.)

**B. Because Questions of Fact Exist as to the Value of the Property, the Remaining Issues Cannot be Decided on Summary Judgment**

Plaintiffs' remaining arguments are all contingent on a finding that the value of the property received by Huntington was greater than the total debt owed. For instance, in arguing that "a higher price would have been obtained at the sheriff's sale," Plaintiffs presume that "there can be no genuine dispute that Fourteen Corp was able to purchase the property below fair market value." Further, Plaintiffs' argument that Defendants had no right to the Brownfield TIF, the liquor license, or rent proceeds also hinges on a finding that the debt owed to Defendants was satisfied as a result of the purchase of the Baker Lofts Property.

Accordingly, these issues will be resolved after the value of the property is determined.

### III.

For the reasons stated above, Plaintiffs' motion for summary judgment (ECF No. 117) will be denied. An order will enter consistent with this opinion.

Dated: June 8, 2016                          /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             UNITED STATES DISTRICT JUDGE